UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

Terence Boddie,

                 Petitioner,                    97 Civ. 7821 (MGC)

                 - against -                     OPINION

Ernest Edwards, Superintendent,
Otisville Correctional Facility,

                 Respondent.

--------------------------------X

**CEDARBAUM, J.**

    Terence Boddie, a state prisoner, petitions pursuant to 28

U.S.C. § 2254 for a writ of habeas corpus.  For the following

reasons, the petition is denied.


                            BACKGROUND

        On April 21, 1991, a criminal complaint was filed against

Boddie and two co-defendants, Matthew Randall and Ronald Austin,

for the rape of Jacqueline Fisher.  The evidence at trial showed

that early in the morning of April 20, 1991, Fisher and a friend

encountered Randall outside Boddie's apartment.  He suggested

they return with him to the apartment, where all three could

smoke crack cocaine.  They did so, and some time later Fisher's

friend left to purchase more drugs.  Shortly thereafter, Randall

forced Fisher to remove her clothes by threatening her with a

shotgun.  Boddie and Austin (who subsequently pleaded guilty)

entered the room, and all three raped her.  Eventually the defendants permitted Fisher to leave.  Outside the apartment, Fisher saw a police car drive by and followed it to a station house a few blocks away, where she made her complaint.

On February 26, 1993, Boddie and Randall were convicted of four counts of first degree rape, five counts of first degree sodomy, and two counts of first degree sexual abuse.  Boddie was sentenced to concurrent prison terms of six to eighteen years for the rape and sodomy counts and two to six years for the sexual abuse counts.

Boddie appealed his conviction to the Appellate Division, First Department, on August 30, 1995.  He asserted five grounds for reversal: (1) he was unfairly prejudiced by a denial of severance; (2) the prosecution relied on improper bolstering and hearsay; (3) comments made by the prosecutor during summation deprived him of his right to a fair trial; (4) he was not present for the reading of his co-defendant's verdict and for a request from the jury for the reading back of testimony; and (5) his sentence was unduly severe.  The appellate division affirmed Boddie's conviction on April 2, 1996.  <u>See</u> <u>People v. Boddie</u>, 226 A.D.2d 120 (1st Dep't 1996).  With the exception of the fourth claim, the court denied Boddie's claims on the merits.  The court found the fourth claim unreviewable because Boddie had failed to record his absences from court.  The Court of Appeals denied

Boddie leave to appeal on August 13, 1996.  See People v. Boddie, 88 N.Y.2d 980 (1996).

Boddie submitted four motions for postconviction relief pursuant to N.Y. Crim. Proc. Law § 440.10.  His first motion asserted two claims: (1) his due process rights were violated when he was absent for the reading back of testimony to the deliberating jury; and (2) the court abused its discretion when it read the co-defendant's verdict without having Boddie present. The trial court denied this motion on June 15, 1995 because Boddie's arguments fell within the scope of his then-pending appeal before the appellate division.  See id. § 440.10(2)(b) (requiring the court to deny a motion to vacate a judgment when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal.").  The appellate division and the Court of Appeals denied leave to appeal on October 16, 1995, and December 7, 1995, respectively.

Boddie's second motion to vacate advanced three claims: (1) his warrantless arrest was not based on probable cause, and therefore the trial court erred in refusing to suppress all evidence stemming from it; (2) the trial court erred in admitting the complainant's in-court identification; and (3) Boddie's right to a speedy trial was violated.  The trial court denied this

motion on January 30, 1996 on the same ground as the first motion. The appellate division denied leave to appeal on May 2, 1996.

Boddie's third motion to vacate raised one argument: that the state had violated People v. Rosario, 9 N.Y.2d 286 (1961), by failing to turn over an allegedly exculpatory audiotape. According to Boddie, this audiotape memorializes a conversation between Officer Smith, one of the arresting officers, and a police dispatcher. Boddie argues that this tape establishes the existence of a two-hour time lag between the report of the crime and the arrest and contradicts the prosecution's claim that exigent circumstances supported the warrantless arrest of Boddie in his home. The trial court denied this motion on June 5, 1996, pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c) and (3)(c).[1] The appellate division denied leave to appeal on July 29, 1996.

---

[1] Section 440.10(2)(c) provides that a court must deny a motion to vacate a judgment when:

> Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

Section 440.10(3)(c) provides that a court may deny a motion to vacate when "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so."

Boddie's fourth motion to vacate raised two claims: (1)
Boddie was deprived of effective assistance of trial counsel when
his lawyer failed to advise him of his right to testify before
the grand jury, failed to move for a speedy trial, and failed to
demand production of the abovementioned audiotape; and (2) the
court erred by letting the state impeach him with recorded
telephonic statements obtained in alleged violation of his
<u>Miranda</u> rights. The latter claim refers to an audiotape of a
conversation between Boddie and Officer Ward of the Civilian
Complaint Review Board (CCRB) with respect to a complaint Boddie
filed against the officers who had arrested him. In the tape,
Boddie made several statements inconsistent with his later trial
testimony. The tape was not played during the trial, but the
prosecutor used statements of Boddie from the tape in cross-
examination. On November 22, 1996, the trial court denied
Boddie's motion, again pursuant to N.Y. Crim. Proc. Law §
440.10(2)(c) and (3)(c). The appellate division denied leave to
appeal on May 8, 1997.

Boddie also petitioned the appellate division twice for a
writ of error coram nobis. The first petition argued that Boddie
was deprived of his right to effective assistance of appellate
counsel when his counsel failed to raise the following four
issues: (1) that the warrantless arrest violated Boddie's Fourth
Amendment rights because the police lacked probable cause,

exigent circumstances, and consent to enter the apartment; (2)
that the complainant's in-court identification of Boddie was
tainted by an unduly suggestive out-of-court identification; (3)
that excessive delay between arrest and trial violated Boddie's
right to a speedy trial under the United States Constitution and
under N.Y. Crim. Proc. Law § 30.30; and (4) that the trial
court's failure to impose <u>Rosario</u> sanctions on the prosecution
violated Boddie's Fourteenth Amendment rights.  The appellate
division denied the writ without opinion on September 5, 1996,
citing <u>People v. Bienvenido De La Hoz</u>, 131 A.D.2d 154, 158 (1st
Dep't 1987).  <u>De La Hoz</u> holds, on the page cited by the appellate
division, that "[t]he burden lies with those raising the issue
[of ineffective assistance of counsel] to rebut the presumption
that counsel has been effective.  The mere existence of an
unraised issue will not suffice.  A defendant must show that had
the issue been raised a greater likelihood would exist that the
judgment would have been reversed, or at least, modified."  <u>Id.</u>

Boddie's second petition for a writ of error coram nobis
claimed that he was denied effective assistance of appellate
counsel because his lawyer did not argue that the trial judge
erred when he allowed the prosecution to use his statements on
the audiotape to impeach Boddie on cross-examination.  The
appellate division denied the writ without opinion on August 21,
1997, again citing <u>De La Hoz</u>.

6

Boddie also filed in the appellate division a "Petition Pursuant to the First Amendment" based on three claims he had previously raised: (1) that the trial court should have suppressed statements and physical evidence stemming from the arrest because the arrest violated his Fourth Amendment rights; (2) that the prosecution's use of the CCRB audiotape to impeach him violated his <u>Miranda</u> rights and his constitutional right to counsel; and (3) that the complainant's in-court identification was tainted by an unduly suggestive show-up and therefore violated his Sixth Amendment rights. The appellate division denied the petition on November 21, 1996.

On October 22, 1997, Boddie filed a petition for a writ of habeas corpus in the Southern District of New York. After respondent submitted opposition papers which responded to five of Boddie's claims, Boddie submitted a "traverse" to his original petition, clarifying that he intended to raise all of the claims advanced in his direct appeal and state postconviction motions and petitions. Those claims, omitting repetition, total twelve: (1) Boddie was unfairly prejudiced by a denial of severance from his co-defendant; (2) the prosecution's case relied on improper bolstering and hearsay; (3) comments made by the prosecution in summation deprived Boddie of his right to a fair trial; (4) he was not present at all stages of his trial; (5) Boddie's sentence was unduly severe; (6) his warrantless arrest violated the Fourth

Amendment; (7) his Sixth Amendment rights were violated when the trial court allowed an in-court identification tainted by an unduly suggestive show-up; (8) Boddie was denied a speedy trial; (9) his Fourteenth Amendment rights were violated when the prosecution failed to turn over evidence to the defense; (10) his rights were violated when the court allowed the prosecution to impeach him through statements obtained in violation of his Miranda rights; (11) Boddie was denied effective assistance of trial counsel; and (12) he was denied effective assistance of appellate counsel.

DISCUSSION

I.  Procedural Default

When a state court decision rests on a state procedural ground which is independent of federal law and adequate to support the judgment, a federal court is barred from habeas corpus review of that decision unless the petitioner can demonstrate either cause for the default and actual prejudice or that failure to consider his claim will result in a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

State courts decided Boddie's fourth, sixth, seventh, eighth, ninth, tenth, and eleventh claims on state procedural grounds.  Claim four was part of Boddie's direct appeal.  The

appellate division determined that Boddie had waived this claim by not preserving an adequate record for review. Claims six through eleven were raised in Boddie's motions to vacate. As described above, the trial court determined in each case that Boddie should have raised the issue either in his direct appeal or in an earlier motion to vacate. The appellate division and Court of Appeals denied leave to appeal in each case. It is presumed that those courts rejected the claims on the same grounds as the trial court. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").[2]

---

[2] Boddie contends that the trial and appellate courts were not "statutorily authorized" to deny his motions to vacate without a hearing. He relies on N.Y. Crim. Proc. Law § 440.10(3)(a), which provides that a court may deny a motion to vacate a judgment in the following situation:

> Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal. This paragraph does not apply to a motion based upon deprivation of the right to counsel at the trial or upon failure of the trial court to advise the defendant of such right.

Boddie appears to read this provision as requiring the state court to provide an evidentiary hearing for his fourth motion to

Boddie offers several potential causes for his default.
With respect to the ineffective assistance of trial counsel
claim, he argues that he could not have raised the issue on
direct review because there was no record for such review.  He
relies on a number of state court decisions which hold that
motions to vacate are the appropriate vehicle for bringing
ineffective assistance of counsel claims when the record does not
provide an adequate basis for direct review.  <u>See, e.g.</u>, <u>People
v. Brown</u>, 45 N.Y.2d 852, 854 (1978).  However, Boddie did not
raise his ineffective assistance of trial counsel claim until his
fourth motion to vacate.  He offers no cause for his failure to
raise it in a previous motion, which was one of the procedural
defaults which the trial court identified.

Similarly, he argues that his trial counsel's failure to
preserve the issues which he raised in his motions to vacate
constituted prejudice.  This is actually an argument about cause
for default, and it fails for the same reason as the previous
one.  Boddie does not offer any reason why he could not have

_____

vacate because it included claims of ineffective assistance of
counsel.  This reading is contrary to the text of the subsection
-- which only deals with the failure to develop a record -- and
of § 440.10 as a whole.  The trial court and appellate division
did not deny Boddie's motions because he failed to develop a
record.  Rather, they were applying § 440.10(2)(c) and (3)(c),
described <u>supra</u>, which bar review of claims that could have been
raised on direct appeal or in an earlier postconviction motion.

raised ineffective assistance of counsel on his direct appeal or

in his first motion to vacate.[3]

As cause for failure to raise his sixth claim, Boddie argues

that his appellate lawyer provided ineffective assistance of

counsel by failing to raise the Fourth Amendment argument on

appeal.  Even if Boddie could establish cause to excuse this

default, his Fourth Amendment argument is barred from habeas

review under Stone v. Powell, 428 U.S. 465 (1976).  Stone holds

that the use at trial of evidence obtained in violation of the

Fourth Amendment cannot form the basis of a collateral attack on

a conviction as long as the petitioner had a "full and fair"

opportunity to litigate his claim in state court.  Id. at 481-82.

Mere failure to raise the issue in state court does not fulfill

the latter condition.  A lack of adequate opportunity to litigate

can only be established "(a) if the state has provided no

---

[3]  The only possible exception is Boddie's fourth claim --
that he was absent during certain portions of the trial -- which
the appellate division addressed on direct review and found
barred from review because the record was inadequate.  But trial
counsel's failure to cause the record to reflect Boddie's absence
during two relatively insignificant points in his trial -- the
reading of his co-defendant's verdict and a request from the jury
-- does not constitute a Strickland violation.  See Strickland v.
Washington, 466 U.S. 668, 688, 694 (1984) (attorney conduct must
be unreasonable under "prevailing professional norms," and give
rise to a reasonable probability that, but for attorney errors,
"the result of the proceeding would have been different.").
Boddie has not shown that his presence during these two points in
the proceedings had any reasonable probability of changing the
outcome of his trial.  Thus, ineffective assistance of counsel
cannot constitute cause for this default.

corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." <u>Capellan v. Riley</u>, 975 F.2d 67, 70 (2d Cir. 1992) (citing <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)), <u>cert. denied</u>, 434 U.S. 1038 (1978).  In Boddie's case, the trial court held a lengthy pretrial suppression hearing, during which Boddie's lawyer vigorously argued that the evidence should be suppressed based on lack of consent to enter the apartment and lack of probable cause to arrest.  Thus, Boddie clearly had an adequate opportunity to litigate his Fourth Amendment claim in state court, and he may not raise it on habeas review.

Finally, Boddie repeatedly asserts that a "fundamental miscarriage of justice" has occurred which should excuse his inability to show cause for his procedural default.  "A <u>habeas</u> petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002); <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).  To show that he is actually innocent, Boddie must "demonstrate that in light of all the

evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation and citation omitted). But Boddie fails to offer any credible arguments for his actual innocence. Indeed, he freely admits in his habeas submissions that he made incriminating statements which were subsequently used to impeach him at trial. He proffers no basis for finding a fundamental miscarriage of justice to cure his procedural defaults.

II. Unexhausted Claims

A state prisoner seeking federal habeas corpus relief must first exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, the petitioner must "fairly present" his federal claim to the state court. Picard v. Conner, 404 U.S. 270, 275 (1971). Picard requires not simply that "the federal habeas applicant has been through the state courts," id. at 275-76, but that those courts have had an opportunity to consider "the substance of [the] federal habeas corpus claim," id. at 278. As the Second Circuit has noted: "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." Daye v. Att. Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

13

While petitioners do not need to cite "book and verse on the federal constitution," Picard, 404 U.S. at 278 (quoting Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)), a generalized claim that a petitioner was deprived of his "right to a fair trial" is not sufficient to notify the state courts of the constitutional nature of the claim. See Duncan v. Henry, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). The Second Circuit has identified several ways in which a petitioner may fairly present his federal claims to state courts: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194.

Boddie did not fairly present his second federal claim -- that the prosecution relied on improper bolstering and hearsay -- to the appellate division. The cases Boddie relied on in his direct appeal were all state decisions interpreting state evidence law. None of those decisions cited federal

constitutional decisions or employed constitutional arguments.
In general, challenges to state court evidentiary rulings do not
present federal constitutional issues cognizable on habeas
review.  See Snow v. Reid, 619 F. Supp. 579, 582 (S.D.N.Y. 1985)
("The concept of 'bolstering' really has no place as an issue in
criminal jurisprudence based on the United States Constitution.
It is at most a New York State rule or policy.").  Thus, Boddie's
claims cannot be said to call to mind specific federal
constitutional rights.  Even if Boddie had properly presented
this claim, he would be unable to prevail on habeas review.  A
claim of bolstering or other evidentiary error "is of
constitutional magnitude only if it denied petitioner a
'fundamentally fair trial.'"  Styles v. Van Zandt, 94 Civ. 1893
(MGC), 1995 WL 326445, at *5 (S.D.N.Y. May 31, 1995) (quoting
Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)).  Boddie has
made no showing that these alleged evidentiary problems resulted
in a fundamentally unfair trial.

      Boddie's fifth claim -- that his sentence is unduly harsh --
was also not properly presented to the appellate division.  He
did not invoke the Eighth Amendment, did not cite any cases which
involved violations of the United States Constitution, and did
not argue that the sentence constituted "cruel and unusual
punishment."  In no other way did he indicate that his claim was
grounded on the United States Constitution.  Boddie argued only

that the trial court abused its discretion, and the appellate court addressed and disposed of this argument in a single sentence: "We perceive no abuse of discretion in sentencing." Boddie, 226 A.D.2d at 121. Again, Boddie's claim would not succeed, even if the sentencing claim had been properly presented. "No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Petitioner was convicted of nine class B violent felonies and two class D violent felonies. According to respondent, he faced a potential prison term of 54 to 162 years. See N.Y. Penal Law § 70.02(1)(a), (3)(a), (4). Because Boddie's term is well within the state law range, his sentence raises no federal issue.

III. Claims Preserved for Habeas Review

Three of Boddie's claims are properly before this court on habeas review: (1) that the trial court's denial of severance resulted in unfair prejudice; (2) that the cumulative effect of prosecutorial comments denied Boddie his right to a fair trial; and (3) that he was deprived of effective assistance of appellate counsel.

Because the state courts rejected these claims on the merits, their determinations are entitled to deference under the

Antiterrorism and Effective Death Penalty Act, 28 U.S.C. §

2254(d).  Specifically, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme

Court held that a state-court decision is "contrary to" Supreme

Court precedent "if the state court applies a rule that

contradicts the governing law set forth in [Supreme Court]

cases," id. at 405, or "if the state court confronts a set of

facts that are materially indistinguishable from a decision of

th[e] Court and nevertheless arrives at a result different from

[the Court's] precedent," id. at 406.  A state-court decision

involves an "unreasonable application" of an established

precedent of the Supreme Court of the United States "if the state

court identifies the correct governing legal rule ... but

unreasonably applies it to the facts," id. at 407, or "if the

state court either unreasonably extends a legal principle from

[the Court's] precedent to a new context where it should not

apply or unreasonably refuses to extend that principle to a new
context where it should apply," id.

A.   Denial of Severance

Boddie argues that his defense of nonparticipation in the
rape was fundamentally inconsistent and in conflict with his co-
defendant Randall's defense of consent.  Furthermore, while his
co-defendant was a convicted felon who admitted to using drugs
and owning the shotgun used in the crime, Boddie was some twenty
years younger, employed, and had no felony record or history of
drug use.  He was unfairly prejudiced by the trial court's denial
of severance because the prosecution was able to impute knowledge
of and participation in Randall's bad acts to Boddie, which
enabled jurors to resolve any reasonable doubts by finding Boddie
guilty by association.

The appellate division affirmed the trial court's denial of
severance, noting that Boddie's "motion for a severance was
properly denied as defendant's claim of non-involvement in the
incident was not inconsistent, let alone irreconcilable, with
codefendant's claim that the sexual encounter was a consensual
act between the complainant and only the codefendant."  Boddie,
226 A.D.2d at 120-21.

To grant federal habeas corpus relief on the basis of an
improper denial of severance, a federal court must find that the

joinder was so prejudicial as to deny the petitioner a fair
trial.  See Grant v. Hoke, 921 F.2d 28, 31 (2d Cir. 1990).  By
contrast, "[i]ncidental prejudice, which is almost always present
when multiple defendants who played different roles are tried
together, will not be enough."  Mercedes v. Herbert, 01 Civ. 1359
(DC), 2002 WL 826809, at *5 (S.D.N.Y. Apr. 30, 2002) (citing
United States v. Martinez, 922 F.2d 914, 922 (1st Cir. 1991)).  A
separate trial is required only upon a showing that "'the jury,
in order to believe the core of testimony offered on behalf of
[one] defendant, must necessarily disbelieve the testimony
offered on behalf of his codefendant.'"  Grant, 921 F.2d at 31
(quoting United States v. Serpoosh, 919 F.2d 835, 838 (2d Cir.
1990)) (alteration in original).

     Boddie has failed to make that showing here.  He has not
explained how his defense was fundamentally irreconciliable with
Randall's.  Nor has he shown that their defenses were
antagonistic.  Indeed, Randall's testimony did not implicate
Boddie in the crime.  Thus, Boddie has failed to show that the
appellate division's denial of this claim "was contrary to, or
involved an unreasonable application of, clearly established
Federal law."  28 U.S.C. § 2254(d)(1).

B.    <u>Cumulative Effect of the Prosecutor's Comments</u>

Boddie also argues that the cumulative effect of improper comments by the prosecutor in summation deprived him of a fair trial.  Specifically, Boddie contends that the prosecutor reminded the jury of Boddie's refusal to admit that he knew about Randall's criminal background, effectively impeaching his credibility by his silence; vouched for the complainant's credibility; attacked the credibility of the defendants' expert witness who testified concerning the effects of crack cocaine on perception; portrayed the medical examination of the complainant after the crime as a comprehensive physical examination; accused Randall's lawyer of attempting to portray the complainant as a "maniac"; called Randall's testimony "nonsense" and expressed other personal opinions.

The appellate division held that "[t]he challenged remarks of the prosecutor in summation were fair comment on the evidence, and an appropriate response to defendant's trial strategy of distancing himself from codefendant and attacking the credibility of the victim based on her drug addiction."  <u>Boddie</u>, 226 A.D.2d at 121.

Prosecutorial misconduct violates a defendant's due process rights only when it is "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987) (quoting <u>United States v.</u>

Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976))).  A federal court reviewing a petition for habeas corpus must distinguish between ordinary trial error and "egregious misconduct" that amounts to a denial of constitutional due process.  Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974)). In order for a prosecutor's comments in summation to warrant habeas relief, the cumulative effect of the challenged statements must have been so inflammatory as to require a finding that they caused substantial prejudice.  See Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990).  Three factors are considered in determining whether a prosecutor's summation created substantial prejudice: "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'"  Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (quoting Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981))).

An examination of the comments in the context of the entire trial demonstrates that they are simply not sufficiently egregious to warrant habeas relief.  The prosecutor's statements concerning the credibility of the complainant and the defense's expert were directly responsive to statements by defense counsel in summation that the complainant was not to be believed because

she had ingested crack cocaine the day of the attack.  The
prosecutor is allowed to respond to such allegations by defense
counsel.  See United States v. Germosen, 139 F.3d 120, 129 (2d
Cir. 1998).  Given the evidence of Boddie's guilt adduced at
trial and the careful and thorough admonition in the court's
charge that the jurors were to rely on their own assessment of
the evidence, it cannot be said that the other comments, even if
improper, deprived Boddie of a fair trial.  Accordingly, Boddie
has failed to show that the state court's denial of this claim
was contrary to clearly established federal law.

C.    Ineffective Assistance of Appellate Counsel

     Petitioner has properly exhausted his ineffective assistance
of appellate counsel claim.  He first raised this claim in coram
nobis petitions to the appellate division.  While that court
summarily denied each petition, both orders cite De La Hoz, a New
York case discussing ineffective assistance of counsel, and
neither refers to N.Y. Crim. Proc. Law § 440.10.  Although the
appellate division did not discuss the merits of Boddie's case,
by citing De La Hoz, it made a ruling on the merits.  See Larrea
v. Bennett, 368 F.3d 179, 183 (2d Cir. 2004) ("In rejecting
[petitioner's] appellate counsel claim, the appellate division
cited only De La Hoz, in which the court rejected an ineffective
assistance claim solely on the merits.  Thus, the court's

decision clearly was an adjudication on the merits.").

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. The Second Circuit has held that the Strickland test applies to appellate as well as trial counsel. See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). It should be noted, however, that appellate counsel's mere failure to raise a claim does not amount to deficient performance. "Counsel does not have a duty to advance every non-frivolous argument that could have been made." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). A petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985)).

Each of Boddie's six bases for contending that he was deprived of effective assistance of appellate counsel fails under

one or both of the <u>Strickland</u> prongs.  First, Boddie claims that
he was prejudiced because his first appellate lawyer was
disbarred and subsequently abandoned the appeal without informing
Boddie.  While this is a serious lapse on the lawyer's part,
Boddie did acquire a second appellate lawyer who revived his
appeal and submitted a well-reasoned, forty-eight page brief
raising five substantive issues.  Thus, Boddie has failed to show
that he suffered significant prejudice as a result of the
deficient performance of his first lawyer.

Second, Boddie claims that his appellate lawyer
unjustifiably failed to raise his Fourth Amendment arguments.
Boddie argues that his arrest violated the rule of <u>Payton v. New
York</u>, 445 U.S. 573 (1980), which prohibits the police, absent
exigent circumstances, from arresting an individual in his home
without a warrant, <u>see</u> <u>id.</u> at 590.  As a consequence, Boddie
contends, the statements and evidence gathered as a result of the
illegal arrest should have been suppressed.

To determine whether appellate counsel was deficient in
failing to raise this claim it is necessary to examine the merits
of Boddie's arguments.  He claims that documentary evidence
exists which shows a gap of two hours between the report of the
crime and his arrest.  He argues that this gap vitiates the
prosecution's claim of exigent circumstances and proves that the
arresting officers committed perjury when they testified about

the circumstances of the arrest.  Boddie also argues that the
consent Randall gave the police to enter the apartment was not
valid, because Randall was only a guest in Boddie's apartment.
Finally, the police lacked probable cause to arrest him, because
the complainant gave them no names or descriptions.  The police
relied solely on the complainant's identification of Boddie,
which occurred when the police led him, handcuffed, from his
bedroom into the hallway of the apartment.

Even assuming Boddie is correct about the two-hour time
lag,[4] the record of the pretrial suppression hearing demonstrates
that the police had Randall's consent to enter Boddie's
apartment.  Randall led the police to the apartment after they
arrested him, and told them he lived there.  In addition, Boddie
himself testified that Randall had lived in the apartment for
several months before the crime.  See United States v. Matlock,
415 U.S. 164, 171 (1974) ("[W]hen the prosecution seeks to

_____

[4]  It is worth noting that despite Boddie's repeated claims
regarding the existence of this time lag, evidence that the
police responded promptly to Fisher's complaint includes not only
statements by the police, but also statements by Randall,
Boddie's co-defendant, who testified that the police arrived at
the apartment approximately one-half hour after the complainant
departed.  Boddie relies on a piece of evidence, an "on-line
booking sheet," which supposedly proves the existence of the two-
hour gap as it indicates that the crime was reported at 7.45 a.m.
Officer Smith's testimony, while somewhat unclear on this point,
suggests instead that the booking sheet memorializes the time the
crime occurred, as reported by the complainant.  Boddie has not
shown that his interpretation of the on-line booking sheet is the
correct one.

justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."). Thus, Boddie has not shown that his counsel was deficient in failing to raise lack of exigency or consent on appeal.

To determine whether appellate counsel's failure to argue lack of probable cause constituted ineffective assistance, it is necessary to consider whether probable cause existed for the arrest. Officer Smith, one of the policemen who arrested Boddie, testified at the pretrial hearing to the facts surrounding the arrest. The complainant had identified her attackers as three black men and stated that they had threatened her with a shotgun. The police returned with the complainant to the scene, and she identified defendant Randall on the street in front of the apartment building. She also identified the building. When the police entered the apartment, Officer Smith found Boddie, Austin, and Boddie's girlfriend in a back bedroom. He ordered them to rise and was bringing them into the hallway when an officer in another room of the apartment shouted that he had found the shotgun in the front bedroom, which the complainant had identified as the site of the attack. Smith then handcuffed

Boddie and the others and led them into the hallway. The
complainant was standing in the hallway outside the apartment.
When she saw Boddie and Austin she immediately identified them as
two of her attackers.

Probable cause to arrest is established upon a showing that
the facts and circumstances known to the arresting officer would
warrant a reasonable person, who possesses the same knowledge as
the officer, to conclude that a crime is being or has been
committed. See Brinegar v. United States, 338 U.S. 160, 175-76
(1949). Here, the complainant led the police to the location of
the crime shortly after the crime had taken place. She
identified one of the attackers on the street. In the apartment,
the police found the weapon she had described in the room she
identified as the site of the attack. The complainant identified
Boddie as one of her attackers without hesitation.

Boddie contends that this identification was unduly
suggestive because of the presence of the police and the fact
that he was handcuffed. Without the identification, he argues,
the arrest lacked probable cause. Even assuming that to be true,
the mere presence of the police and the fact that the suspect is
handcuffed does not automatically make an identification unduly
suggestive. See, e.g., United States v. Bautista, 23 F.3d 726,
730 (2d Cir. 1994). The proper inquiry, rather, is whether the
identification procedure was "so unnecessarily suggestive and

conducive to irreparable mistaken identification that [petitioner] was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302 (1967). "[F]actors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188 (1972); see also Manson v. Brathwaite, 432 U.S. 98 (1977). In making the inquiry, a court is required to look at "the totality of surrounding circumstances." Simmons v. United States, 390 U.S. 377, 383 (1968).

All of the facts in this case indicate that the show-up was not unduly suggestive. The identification took place shortly after the crime. The complainant's testimony indicates that she had ample opportunity both before and during the attack to view her attackers. The complainant identified Boddie as soon as she saw him, without hesitation and with no prodding from the police. Indeed, she testified that she was not aware that Boddie was handcuffed when she saw him enter the hallway.

In sum, because the issues of exigency, consent, and probable cause were not clearly meritorious issues that counsel

unaccountably ignored in favor of less meritorious arguments, it cannot be said that Boddie lacked effective assistance of counsel.  Accordingly, the appellate division's denial of this claim does not justify habeas relief.

Third, Boddie contends that his appellate lawyer should have argued that the complainant's in-court identification was tainted by the unduly suggestive show-up.  As discussed above, the show-up was not so suggestive that the lawyer's failure to raise this issue on appeal amounts to demonstrably deficient performance. In addition, Boddie has not shown that preventing an in-court identification would have had a reasonable probability of changing the outcome of his trial.  The complainant's testimony describing Boddie's participation in the crime, as well as his own incriminating statements, constituted significant evidence of Boddie's guilt.

Fourth, Boddie asserts that his lawyer failed to argue that his right to a speedy trial was violated by a 21-month delay between arrest and trial.  Boddie appears to argue that this was a violation of the Sixth Amendment as well as of New York's statutory speedy trial provision, N.Y. Crim. Proc. Law § 30.30, which mandates the dismissal of a felony indictment when the state does not declare its readiness for trial within 180 days of the filing of the indictment.

The Supreme Court has identified four factors courts should use to determine whether delay in trial has resulted in a defendant's deprivation of his Sixth Amendment right to a speedy trial: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). Boddie has shown the length of the delay, but has not shown how any of the other factors demonstrate a deprivation of his right. Thus, he failed to show that the appellate division's denial of this claim was an unreasonable application of federal law. <u>See also</u> <u>Smith v. Keane</u>, 98 Civ. 5615 (JBW), 2003 WL 21850566, at *7 (E.D.N.Y. July 30, 2003) (Rejecting claim that seventeen month delay between arrest and trial was unreasonable under the Sixth Amendment).

Insofar as Boddie is claiming that his lawyer's failure to make a speedy trial motion pursuant to N.Y. Crim. Proc. Law § 30.30 constituted a violation of his constitutional right to effective assistance, that claim cannot succeed. Section 30.30 requires that a defendant's motion to dismiss for denial of her right to a speedy trial be granted "where the people are not ready for trial within ... six months" after a reasonable period of delay is excluded.[5] In response to an order dated July 20,

---

[5] Section 30.30 provides, in pertinent part, that a motion by the defendant for the failure to provide a speedy trial must be granted "where the people are not ready for trial within ...

2004, respondent has submitted the transcribed minutes of
pretrial adjournments in state court, as well as contemporaneous
entries made by the assistant district attorneys who were
responsible for prosecuting Boddie.  This evidence reveals that
Boddie's right to a speedy trial under § 30.30 was not violated.
Delays between Boddie's indictment and trial which were
attributable to the state did not exceed 180 days.  Although
there were numerous other delays, occasioned by defense motions,
consideration and disposition of such motions by the state court,
failure of defense counsel to appear, and other requests for
adjournment made by the defense, the state declared its readiness
for trial on these occasions.  Thus, Boddie has not shown that
his speedy trial claim has merit.  Accordingly, Boddie's counsel
was not ineffective in failing to raise a speedy trial claim.

---

(a) six months of the commencement of a criminal action wherein a
defendant is accused of one or more offenses at least one of
which is a felony."  N.Y. Crim. Proc. Law § 30.30(1).  In
computing this time, § 30.30(4) requires that the following
periods be excluded: "(a) a reasonable period of delay resulting
from other proceedings concerning the defendant, including but
not limited to: ... [a] request for a bill of particulars;
pretrial motions; appeals, trial of other charges; and the period
during which such matters are under consideration by the court;
or (b) the period of delay resulting from a continuance granted
by the court at the request of, or with the consent of, the
defendant or his counsel; or ... (d) a reasonable period of delay
when the defendant is joined for trial with a co-defendant as to
whom the time for trial pursuant to this section has not run and
good cause is not shown for granting a severance; or ... (g)
other periods of delay occasioned by exceptional
circumstances..."  N.Y. Crim. Proc. Law § 30.30(4).

Fifth, Boddie contends that his lawyer should have argued that his Fourteenth Amendment rights were violated when the trial court did not impose sanctions on the prosecution for violating Rosario. Boddie contends that "flysheets" from Officer Smith's memo book and an audiotape of a conversation between Officer Smith and the police dispatcher would definitively establish that the crime was reported some two hours before the arrest, showing that the police manufactured exigency and committed perjury.

Again, the trial lawyer appears to have waived this issue by failing to move for sanctions. Construing Boddie's argument as a claim that his appellate counsel neglected to raise trial counsel's failure to move for sanctions does not change the outcome, because it is far from clear that Rosario violations occurred. The record shows that the prosecution produced flysheets from the memo books of all of the officers involved in the arrest. Upon cross-examination, Officer Smith stated that he may have other flysheets with information relevant to this incident, and defense counsel demanded production of those. The record contains no further mention of the flysheets. Trial counsel's vigorous pursuit of the flysheets in the pretrial hearing and during the trial suggest that he would have raised the issue again and moved for sanctions had there been any problem in production. The record is also devoid of any mention of an audiotaped conversation between Officer Smith and the

police dispatcher.  The only references to the existence of this evidence come from Boddie's submissions to the court.  Boddie has not explained his basis for believing that such evidence exists. Because he cannot show that his trial counsel was ineffective in failing to move for sanctions, he cannot show that his appellate counsel's failure to raise this issue on appeal caused him prejudice.

Finally, petitioner argues that he was denied effective assistance of counsel because his trial lawyer failed to challenge the prosecution's use of statements Boddie made on the CCRB tape to impeach Boddie on cross-examination.  Those statements, Boddie contends, were elicited from him without the warning required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  It is doubtful that <u>Miranda</u> applies to the statements at issue.  The recorded telephone conversation took place in connection with Boddie's complaint to the CCRB.  There is no evidence that, at the time of the conversation, Boddie was in custody.

Moreover, the prosecution's use of Boddie's statements, which was minimal, was for the purpose of impeaching Boddie on cross-examination.  The Supreme Court has held that a statement obtained in violation of a defendant's <u>Miranda</u> rights may be used to impeach a defendant who has chosen to testify on his own behalf, <u>see</u> <u>Harris v. New York</u>, 401 U.S. 222, 226 (1971), provided that the statement was voluntary, <u>see</u> <u>New Jersey v. </u>

Portash, 440 U.S. 450, 458-60 (1979); see also People v. Maerling, 64 N.Y.2d 134, 140-41 (1984). Because Boddie's statement on the CCRB tape was a voluntary statement made in connection with a complaint he filed against his arresting officers, no challenge could have been raised to the prosecution's use of that statement to impeach Boddie. Accordingly, the failure to raise a challenge was not ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, petitioner's habeas corpus petition is denied.

SO ORDERED.

Dated:     New York, New York
           April 30 , 2005

                                   _____
                                   MIRIAM GOLDMAN CEDARBAUM
                                   United States District Judge